[No. A080638. First Dist., Div. Three. Jan. 19, 1999.]

ACCEPTANCE INSURANCE COMPANY, Plaintiff and Appellant, v. SYUFY ENTERPRISES et al., Defendants and Respondents.

322

## COUNSEL

Wild, Carey & Fife, Donald R. Wild, Paul Fife and Robert Lindkvist for Plaintiff and Appellant.

Gordon & Rees, Donald W. Rees and Patricia Scott for Defendant and Respondent Reliance Insurance Company of Illinois.

Gordon-Creed, Kelley, Holl & Sugerman, Jeremy Sugerman and Geoffrey Gordon-Creed for Defendants and Respondents Syufy Enterprises and Syufy Century Corporation.

## OPINION

**PARRILLI, J.**—A contractor's employee working on the roof of a building is injured as he climbs through a hatch providing the only roof access. The hatch was negligently maintained by the building owner. In a personal injury action by the employee, is the building owner covered by an endorsement to the contractor's commercial general liability policy making the owner an additional insured "but only with respect to liability arising out of" the contractor's work for the owner? Like the great majority of courts in other jurisdictions where such issues have been considered, we conclude the additional insured endorsement applies, whether the clause in question is

considered ambiguous and thus construed in favor of coverage, or whether it is given the broad meaning generally accorded to the term "arising out of" in contracts of insurance.

Acceptance Insurance Company (AIC) appeals from judgments in favor of respondents Reliance Insurance Company of Illinois (Reliance), and Syufy Enterprises and related entities (collectively, Syufy). The judgments were entered after the trial court granted summary judgment motions by Reliance and Syufy. At issue is whether Syufy is covered by the additional insured endorsement obtained by AIC's named insured, C & C Building Automation Company (C & C), which performed electrical work for Syufy. Because there is a cross-complaint by Syufy pending in the trial court, we have dismissed the appeal from the judgment obtained by Syufy under the one final judgment rule. (*Morehart* v. *County of Santa Barbara* (1994) 7 Cal.4th 725, 743 [29 Cal.Rptr.2d 804, 872 P.2d 143].) However, the Reliance judgment is properly before us, and the parties raise the same issue regarding both judgments. We affirm the Reliance judgment.

## BACKGROUND

The relevant facts are undisputed. C & C contracted with Syufy to upgrade the lighting and temperature controls at a theater owned by Syufy. Although the contract stated "Owner is to carry necessary insurance," C & C requested its commercial general liability insurer, AIC, to provide additional insured coverage to Syufy. The endorsement issued by AIC provided that Syufy was included as an insured under the policy, "but only with respect to liability arising out of 'your work' for that insured by or for you." The policy specified that "you" and "your" referred to C & C, the named insured. It defined "your work" as "[w]ork or operations performed by you or on your behalf." Syufy was also covered by a policy from Reliance, which by its terms was excess to other insurance available to Syufy, and which included a self-insured retention of $150,000.

In April 1994, C & C employee Kurt Weber was working on the roof of Syufy's theater. His wife was visiting him on the job. Weber took a break to take his wife to the airport, after which he planned to return to work. A roof hatch provided the only access to and from the roof. As Weber was climbing down through the hatch, it fell and severed one of his fingers. Weber sued Syufy, alleging his injury was the result of Syufy's failure to provide and maintain a safe closing mechanism on the hatch, and its failure to warn him about the hatch's defective condition. Syufy tendered the defense of Weber's action to AIC, and AIC accepted the tender without reservation. Through investigation and discovery, AIC eventually learned that Weber was leaving

to take his wife to the airport at the time of the accident, and that neither he nor any C & C employee ever did any work on the hatch. AIC also came to believe that Syufy had known for several years that the hatch was defective.

AIC sent Syufy a letter advising that there was potentially no coverage under the additional insured endorsement. AIC asked Syufy to notify Reliance about the incident and about Reliance's duty to participate in the defense and indemnification of Weber's claim. AIC noted that a mandatory settlement conference was scheduled the next month, requested Syufy and Reliance to attend, and declared its intent to seek indemnification for any damages that did not arise out of C & C's work. Thereafter, AIC funded a $400,000 settlement with Weber on Syufy's behalf. AIC then brought the instant action against Syufy and Reliance, seeking declaratory relief regarding the parties' rights and obligations in the defense and indemnification of Weber's claim, and equitable contribution or indemnification for the costs of defending and settling the Weber action.

The trial court granted Reliance's motion for summary judgment on the ground that the AIC policy "unambiguously provides coverage to Syufy for Syufy's independent negligence."

## DISCUSSION

■ Summary judgment is properly granted when there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. When, as in this case, there is no dispute about the relevant facts, we exercise our independent judgment regarding their legal effect. The only issue before us involves the meaning and application of the language in AIC's policy, which is a pure issue of law. (Code Civ. Proc., § 437c, subd. (c); *Old Republic Ins. Co.* v. *Superior* Court (1998) 66 Cal.App.4th 128, 141-142 [77 Cal.Rptr.2d 642]; *Lebas Fashion Imports of USA, Inc.* v. *ITT Hartford Ins. Group* (1996) 50 Cal.App.4th 548, 555 [59 Cal.Rptr.2d 36].)

■ " 'While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply.' . . . 'The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties.' . . . 'Such intent is to be inferred, if possible, solely from the written provisions of the contract.' . . . 'If contractual language is clear and explicit, it governs.' . . .

" 'A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable.' . . . The fact that a term is not defined in the polic[y] does not make it ambiguous. . . . Nor

does '[d]isagreement concerning the meaning of a phrase,' or ' "the fact that a word or phrase isolated from its context is susceptible of more than one meaning." ' . . . ' "[L]anguage in a contract must be construed in the context of that instrument as a whole, and in the circumstances of th[e] case, and cannot be found to be ambiguous in the abstract." ' . . . 'If an asserted ambiguity is not eliminated by the language and context of the policy, courts then invoke the principle that ambiguities are generally construed against the party who caused the uncertainty to exist (i.e., the insurer) in order to protect the insured's reasonable expectation of coverage.' . . ." (*Foster-Gardner, Inc.* v. *National Union Fire Ins. Co.* (1998) 18 Cal.4th 857, 868 [77 Cal.Rptr.2d 107, 959 P.2d 265], citations omitted.)

█ AIC contends the "liability arising out of 'your work' " clause of the additional insured endorsement is ambiguous, because it might be interpreted to include any liability arising while C & C was on Syufy's premises to perform its work, or it might be restricted to liability arising directly from C & C's work product. AIC suggests extrinsic evidence must be consulted to resolve the ambiguity. It argues that because the contract between Syufy and C & C called on Syufy to "carry necessary insurance" without requiring C & C to name Syufy as an additional insured under C & C's policy, the parties must have contemplated that the additional insured endorsement would cover Syufy only where C & C's work or operations exposed Syufy to liability where none would otherwise exist. Because Weber was injured after he stopped working and was leaving the jobsite, through a roof hatch on which C & C performed no work, and which injured him solely because of Syufy's negligent maintenance, there could be no coverage under the additional insured endorsement, according to AIC.

There are several problems with AIC's analysis, even accepting its premise that the clause at issue is ambiguous. First, AIC fails to explain how the contract between Syufy and C & C affected AIC's understanding of the additional insured endorsement's scope. If policy language appears ambiguous, we must first attempt to interpret the ambiguous provision in the sense the insurer believed the insured would reasonably and objectively have understood it when the policy was issued. (*Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1264-1265 [10 Cal.Rptr.2d 538, 833 P.2d 545].) The record does not indicate that AIC reviewed the contract between Syufy and C & C before issuing the additional insured endorsement.

Second, the contract provision requiring Syufy to carry "necessary insurance" does not logically support AIC's restrictive reading of the additional insured endorsement. Instead, the contract's insurance provision appears to be fundamentally inconsistent with the issuance of the endorsement. Additional insured coverage would not have been needed if Syufy were providing whatever insurance was "necessary" for purposes of its contract with C & C.

Finally, AIC fails to confront the familiar rule that when an ambiguity remains unresolved after considering the policy's language and context, and the parties' objectively reasonable expectations, then the ambiguity is resolved against the insurer and in favor of coverage. (*Foster-Gardner, Inc.* v. *National Union Fire Ins. Co.*, *supra*, 18 Cal.4th at p. 868; *Bank of the West* v. *Superior Court*, *supra*, 2 Cal.4th at p. 1265.) No California precedent has construed an additional insured endorsement like the one before us, but in *Merchants Ins. Co. of New Hampshire, Inc.* v. *USF&G* (1st Cir. 1998) 143 F.3d 5, the court applied Massachusetts law to an additional insured clause identical to AIC's, concluding that if the "arising out of" phrase were viewed as ambiguous it had to be construed liberally in favor of the additional insured and against the insurer, and thus would not exclude coverage for the additional insured's own negligence. (*Id.* at pp. 9-10.) The same rationale has been followed in other cases involving similar additional insured provisions. (See, e.g., *Tishman Const. Corp.* v. *CNA Ins. Co.* (1997) 236 A.D.2d 211 [652 N.Y.S.2d 742, 743]; *Florida Power & Light* v. *Penn America* (Fla.Dist.Ct.App. 1995) 654 So.2d 276, 279; *McIntosh* v. *Scottsdale Ins. Co.* (10th Cir. 1993) 992 F.2d 251, 254 [applying Kansas law].)

AIC argues that even without considering the parties' underlying intent, its additional insured endorsement would not apply to Syufy's liability for Weber's injury under California case law interpreting the policy term "arising out of." AIC relies on cases involving automobile insurance covering liability "arising out of the ownership, maintenance, or use" of an automobile. It cites *Farmers Ins. Exchange* v. *Reed* (1988) 200 Cal.App.3d 1230, 1233 [248 Cal.Rptr. 11], for the proposition that there must be a causal connection between the use and the injury beyond a "but for" link; the use of the vehicle must be a "predominating cause" or a "substantial factor" in causing the injury. AIC cites *Pacific Indem. Co.* v. *Truck Ins. Exch.* (1969) 270 Cal.App.2d 700, 704-705 [76 Cal.Rptr. 281], for the proposition that the negligence of another—in that case, the negligent maintenance of a hoist by a shop owner that caused the insured's vehicle to fall on the insured—constitutes an intervening cause precluding coverage. AIC also notes that in *Farmers Ins. Exchange* v. *Hansel* (1970) 12 Cal.App.3d 570, 574 [90 Cal.Rptr. 654], the court ruled that an injury arising from the "use" of an automobile to break a bottle that was then wielded in a traffic altercation, and the "use" of a car door as a shield, was "not the form of loss for which the automobile liability policy may reasonably be expected to provide indemnity." From these cases, AIC draws the analogy that its policy does not apply because Weber's presence on the roof to do his job was not sufficiently causally connected with his injury, which was attributable solely to Syufy's negligent maintenance of the roof hatch.

We are not persuaded. In each of the cases cited by AIC, the court took pains to distinguish automobile liability insurance from general liability

insurance, and accordingly to focus on the "use" of a vehicle as a factor in the injury. (*Farmers Ins. Exchange* v. *Reed, supra,* 200 Cal.App.3d at p. 1233 [" 'Clearly the parties to an automobile liability policy do not contemplate a general liability insurance contract.' "]; *Pacific Indem. Co.* v. *Truck Ins. Exch., supra,* 270 Cal.App.2d at p. 704 ["vehicle liability policies stop somewhere short of all-risk coverage"]; *Farmers Ins. Exchange* v. *Hansel, supra,* 12 Cal.App.3d at p. 574 ["we reject appellant's contention that uninsured motorist coverage is a substitute for general . . . liability coverage"]; see also *Continental Heller Corp.* v. *Amtech Mechanical Services, Inc.* (1997) 53 Cal.App.4th 500, 506, fn. 2 [61 Cal.Rptr.2d 668] ["Without this restrictive interpretation of the causation requirement, automobile liability policies would be converted into general liability insurance contracts"].) Here, we are determining coverage under a commercial general liability policy.

Furthermore, California courts have consistently given a broad interpretation to the terms "arising out of" or "arising from" in various kinds of insurance provisions. It is settled that this language does not import any particular standard of causation or theory of liability into an insurance policy. Rather, it broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship. (See, e.g., the discussions in *Fibreboard Corp.* v. *Hartford Accident & Indemnity Co.* (1993) 16 Cal.App.4th 492, 503-505 [20 Cal.Rptr.2d 376] [products hazard provision in general liability policy]; *State Farm Fire & Casualty Co.* v. *Salas* (1990) 222 Cal.App.3d 268, 274, fn. 4 [271 Cal.Rptr. 642] [exclusionary clause in homeowners policy]; *Continental Cas. Co.* v. *City of Richmond* (9th Cir. 1985) 763 F.2d 1076, 1080, applying California law [exclusionary clause in errors and omissions policy]; *Transport Indemnity Co.* v. *Schnack* (1982) 131 Cal.App.3d 149, 151-152 [182 Cal.Rptr. 256] [coverage clause in aircraft liability policy]; see also *Century Transit Systems, Inc.* v. *American Empire Surplus Lines Ins. Co.* (1996) 42 Cal.App.4th 121, 127, fn. 4 [49 Cal.Rptr.2d 567] ["based on" term of exclusionary clause in general liability policy given same broad interpretation as "arising out of"]; cf. *Charles E. Thomas Co.* v. *Transamerica Ins. Group* (1998) 62 Cal.App.4th 379, 383-384 [72 Cal.Rptr.2d 577] [exclusion of loss "arising out of . . . any request, demand, or order" to monitor, clean up, or respond to pollutants did not apply to liability not resulting from any request, demand, or order].)

Under this commonsense approach, Weber's injury clearly "arose out of" the work he was performing on the roof of Syufy's building. The relationship between the defective hatch and the job was more than incidental, in that Weber could not have done the job without passing through the hatch. The fact that the defect was attributable to Syufy's negligence is irrelevant,

since the policy language does not purport to allocate coverage according to fault.

This reading of AIC's additional insured endorsement is consistent with the reasoning adopted in cases from other jurisdictions concerning the effect of additional insured provisions governing liability "arising out of 'your work'" or "arising out of operations performed" by the named insured. (*Merchants Ins. Co. of New Hampshire, Inc.* v. *USF&G, supra,* 143 F.3d at pp. 9-10, applying Massachusetts law ["arising out of" denotes "intermediate causation standard" between "but for" and proximate cause; endorsement covered additional insured for its own negligence]; *Township of Springfield* v. *Ersek* (Pa. Commw. Ct. 1995) 660 A.2d 672, 676-677 ["arising out of" means causally connected with, not proximately caused by; additional insured covered for its own negligence]; *Consolidated Edison* v. *Hartford Ins. Co.* (1994) 203 A.D.2d 83 [610 N.Y.S.2d 219, 221] ["policy language focuses not upon the precise cause of the accident . . . but upon the general nature of the operation in the course of which the injury was sustained"; negligence of additional insured "is immaterial"]; *McIntosh* v. *Scottsdale Ins. Co., supra,* 992 F.2d at pp. 254-255, applying Kansas law [coverage is not limited to cases where additional insured is vicariously liable for named insured's negligence; remote "but for causation" is insufficient, but standard is more liberal than proximate cause]; *Casualty Ins. Co.* v. *Northbrook Property* (1986) 150 Ill.App.3d 472 [103 Ill.Dec. 501 N.E.2d 812, 814-815] ["but for causation" is sufficient; coverage does not depend on fault of named insured]; see also *Florida Power & Light* v. *Penn America, supra,* 654 So.2d at p. 279, approved in *Container Corp. of America* v. *MD Cas. Co.* (Fla. 1998) 707 So.2d 733, 737 [coverage "only with respect to operations by or on behalf of the Named Insured" did not require fault on part of named insured before additional insured would be included]; *Lim* v. *Atlas-Gem Erectors Co., Inc.* (1996) 225 A.D.2d 304 [638 N.Y.S.2d 946, 947] [negligence of additional insured was immaterial under provision covering it " 'only with respect to operations performed by or on behalf of the Named Insured' "].)

Our research has disclosed only one jurisdiction, Texas, which has taken a restrictive, fault-based view of an additional insured endorsement for liability "arising out of" work or operations performed by the named insured. In *Granite Const.* v. *Bituminous Ins.* (Tex.Civ.App. 1992) 832 S.W.2d 427, the named insured contracted to haul materials from a construction site, and obtained an additional insured endorsement covering the construction contractor "but only with respect to liability arising out of operations performed for [the additional insured] by or on behalf of the named insured." An employee whose truck overturned while he was driving sued the additional insured, alleging that his injuries were caused by its negligent loading of the

truck. (*Id.* at p. 428.) With little discussion, the court concluded "it is at once obvious" that the employee's claim arose out of the loading of the truck, which was the additional insured's sole responsibility, and not out of the hauling performed by the named insured, which was the only operation to which the additional insured endorsement applied. (*Id.* at p. 430; see also *Northern Ins. Co. of N.Y.* v. *Austin Commercial, Inc.* (N.D.Tex. 1994) 908 F.Supp. 436, 437 [following *Granite Construction,* and holding that similar additional insured endorsement only covered claims involving direct negligence by named insured].)

We disagree with the Texas approach. It is inconsistent with the ordinary broad meaning of "arising out of," which as noted above has been regularly applied by California courts in insurance cases. This inconsistency leads to tortured results. In *Granite Construction,* the negligent loading of the named insured's truck caused no injury (and no liability) until the named insured's employee began hauling the load, in the course of which the truck overturned. It is difficult to understand how the driver's claim did not arise out of the hauling operation in the most direct way, unless one assumes that fault is a predicate for coverage. We do not believe such an assumption is justified by the policy term "liability arising out of operations."

█ Insurance companies are free to, and commonly have, issued additional insured endorsements that specifically limit coverage to situations in which the additional insured is faced with vicarious liability for negligent conduct by the named insured. (See, e.g., *Consolidation Coal Co., Inc.* v. *Liberty Mut. Ins.* (W.D.Pa. 1976) 406 F.Supp. 1292, 1294, fn. 2 [additional insured covered "only with respect to acts or omissions of the named insured"]; *Harbor Ins. Co.* v. *Lewis* (E.D.Pa. 1983) 562 F.Supp. 800, 801 [additional insureds covered "only to the extent of liability resulting from occurrences arising out of negligence" of the named insured]; *Maryland Casualty Co.* v. *Nationwide Ins. Co.* (1998) 65 Cal.App.4th 21, 28 [76 Cal.Rptr.2d 113] [additional insured covered " 'only to the extent [the additional insured] is held liable for [the named insured's] acts or omissions arising out of and in the course of operations' "].) We believe the better view is that when an insurer chooses not to use such clearly limited language in an additional insured clause, but instead grants coverage for liability "arising out of" the named insured's work, the additional insured is covered without regard to whether injury was caused by the named insured or the additional insured. (*Merchants Ins. Co. of New Hampshire, Inc.* v. *USF&G, supra,* 143 F.3d at p. 10; *Township of Springfield* v. *Ersek, supra,* 660 A.2d at p. 676; *Consolidated Edison* v. *Hartford Ins. Co., supra,* 610 N.Y.S.2d at p. 221; *McIntosh* v. *Scottsdale Ins. Co., supra,* 992 F.2d at p. 255; *Casualty Ins. Co.* v. *Northbrook Property, supra,* 501 N.E.2d at p. 815.)

█ AIC, in a letter brief filed after the publication of *Maryland Casualty Co.* v. *Nationwide Ins. Co., supra,* 65 Cal.App.4th 21, urges us to follow

*Maryland Casualty*'s view that limiting coverage under an additional insured endorsement to situations where the additional insured is held liable for the named insured's negligence "is consistent with the 'well established meaning' of additional insured provisions: '[t]hey are intended to protect parties who are not named insureds from exposure to vicarious liability for acts of the named insured.' (*Harbor Ins. Co.* v. *Lewis*[, *supra*,] 562 F.Supp. [at p.] 803.)" (*Maryland Casualty Co.* v. *Nationwide Ins. Co.*, *supra*, 65 Cal.App.4th at p. 31.) However, because it provided its insureds with a broader additional insured endorsement than the ones before the *Maryland Casualty* and *Harbor* courts, AIC cannot take advantage of the reasoning in those cases. The same court that issued the *Harbor* opinion has made it clear that "[t]he *Harbor* court interpreted specific contract language. It did not . . . articulate a rule of law limiting the interest of an additional insured on a comprehensive general liability policy to those cases in which it is vicariously liable for the acts of the primary policyholder." (*Philadelphia Elec. Co.* v. *Nationwide Mut. Ins. Co.* (E.D.Pa. 1989) 721 F.Supp. 740, 742 (*PECO*).)

In *PECO*, the named insured, Davey Tree, obtained a certificate of insurance making PECO an additional insured " 'for any work performed by [Davey Tree] on [PECO's] behalf.' " (721 F.Supp. at p. 742.) The court held: "The contract language in this case contemplates a wider scope of coverage than the language in *Harbor*. If the parties had intended coverage to be limited to the vicarious liability type suggested by the defendants, language clearly embodying that intention was available—that is the lesson of *Harbor*. Here, the language of the Certificate of Insurance should be read to include all liability arising in connection with Davey Tree's work, including PECO's own negligence." (*Ibid.*)

The lesson of *Harbor* and *PECO*, and of nearly all cases interpreting additional insured provisions like AIC's, supports the trial court's ruling in this case.

### DISPOSITION

The judgment is affirmed. Reliance shall recover its costs on appeal.

Corrigan, Acting P. J., and Phelan, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied April 14, 1999. Chin, J., was of the opinion that the petition should be granted.

---

*Retired Presiding Justice of the Court of Appeal, First District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.