# United States Court of Appeals

## For the First Circuit

---

Nos. 03-2503, 03-2504, 03-2507, and 03-2508

NATIONAL UNION FIRE INSURANCE COMPANY OF
PITTSBURGH, PENNSYLVANIA,

Plaintiff-Appellant/Cross-Appellee,

v.

LUMBERMENS MUTUAL CASUALTY COMPANY,

Defendant-Appellee/Cross-Appellant,

K.C. ELECTRIC COMPANY; S.A. HEALY COMPANY/
MODERN CONTINENTAL, A JOINT VENTURE,

Defendants-Appellees.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Rya W. Zobel, U.S. District Judge]

---

Before

Boudin, Chief Judge,
and Torruella and Dyk[*], Circuit Judges.

---

Tamara J. Smith with whom James J. Duane, III and Taylor, Duane, Barton & Gilman, LLP were on brief for plaintiff-appellant/cross-appellee.
Peter E. Heppner with whom Lynch & Lynch was on brief for defendant-appellee/cross-appellant.

---

September 27, 2004

---

[*]Of the Federal Circuit, sitting by designation.

**DYK**, <u>Circuit Judge</u>. This case, including an appeal and a cross-appeal, involves a dispute between two insurance companies. The dispute concerns their respective responsibilities to pay defense and settlement costs relating to injuries to Richard Leahy and Philip Sheehan, two workmen employed by K.C. Electric Company, Inc. ("K.C. Electric"). K.C. Electric was a subcontractor performing work for S.A. Healy/Modern Continental ("S.A. Healy"), a prime contractor, on the Deer Island Tunnel Project (the "Project"). Resolution of this dispute requires us to interpret two insurance policies. The first policy was issued to the subcontractor by Lumbermens Mutual Casualty Company ("Lumbermens"), and the second policy was issued to the prime contractor by National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union").

As to the first policy, the question is whether the Lumbermens policy, though issued to the subcontractor, also provided coverage to the prime contractor in the circumstances of this case and, hence, to the prime contractor's subrogee, National Union. The second question is whether the National Union policy provided only excess coverage. If both policies covered the prime contractor in these circumstances, the companies would divide the liabilities; if the Lumbermens policy applied, and if the National Union policy provided only excess coverage, Lumbermens was solely responsible.

We conclude that the Lumbermens policy covered the prime contractor, but that genuine issues of material fact exist as to whether the National Union policy provided only excess coverage. We thus vacate the district court's judgment and remand for further proceedings.

## I

Leahy and Sheehan, who were employees of K.C. Electric, were injured on the site of the Project when they slipped and fell while they were in the tunnel. They filed separate actions against S.A. Healy, claiming that they incurred their injuries as a result of S.A. Healy's negligence in failing to maintain a safe work site. Both actions were settled before trial; Lumbermens and National Union each contributed to the settlement payments. National Union then instituted two actions in the district court, seeking declarations that (1) S.A. Healy was an "additional insured" under the Lumbermens policy, obligating Lumbermens at least to share in the defense and settlement costs, and (2) that the National Union policy was in excess of the Lumbermens policy pursuant to the policies' respective "other insurance" provisions, thus making Lumbermens entirely liable for the defense and settlement costs. National Union moved for summary judgment in both cases. The parties agree that the policies are interpreted in accordance with Massachusetts law.

The district court denied National Union's summary judgment motions in two nearly identical opinions issued on the same day. Nat'l Union Fire Ins. Co. v. Lumbermen's Mut. Cas. Ins. Co., No. 02-10876-RWZ (D. Mass. Oct. 1, 2003) ("Leahy"); Nat'l Union Fire Ins. Co. v. Lumbermen's Mut. Cas. Ins. Co., No. 02-CV-12001-RWZ (D. Mass. Oct. 1, 2003) ("Sheehan"). First, the district court held that S.A. Healy qualified as an additional insured under the Lumbermens policy. Leahy, slip op. at 3; Sheehan, slip op. at 3. Second, the district court held that both National Union and Lumbermens were primary carriers, that is, that the National Union policy was not an excess coverage policy. Leahy, slip op. at 5; Sheehan, slip op. at 5. In addition, in the case involving Leahy, the district court held that, because both Lumbermens' and National Union's policies provided for contribution by equal shares, "National Union and Lumbermen's are equally liable for the settlement." Leahy, slip op. at 5.

Thus, the district court held that National Union could not recover the portions of the settlement payments that it had paid, effectively granting summary judgment to Lumbermens on the excess coverage issue, and effectively granting summary judgment to National Union on the additional insured issue. See generally 10A Charles Alan Wright et al., Federal Practice & Procedure § 2720, at 347 (3d ed. 1998) ("[S]ummary judgment may be rendered in favor of

-4-

the opposing party even though the opponent has made no formal cross-motion under Rule 56.").

On joint motion of the parties, the district court subsequently entered final judgments pursuant to Fed. R. Civ. P. 54(b) in accordance with its earlier decisions. Nat'l Union Fire Ins. Co. v. Lumbermens Mut. Cas. Ins. Co., No. 02CV10876 RWZ (D. Mass. Jan. 21, 2004); Nat'l Union Fire Ins. Co. v. Lumbermens Mut. Cas. Ins. Co., No. 02-CV-12001-RWZ (D. Mass. Dec. 31, 2003). The parties appealed and cross-appealed from those judgments.

## II

### A

We first consider whether the Lumbermens policy covered S.A. Healy as an additional insured. We review the district court's effective grant of summary judgment in favor of National Union without deference, drawing all reasonable inferences in favor of the non-moving party. Beacon Mut. Ins. Co. v. OneBeacon Ins. Group, 376 F.3d 8, 14 (1st Cir. 2004).

The subcontract between S.A. Healy and K.C. Electric required K.C. Electric to obtain commercial general liability insurance, among other insurance, and to name S.A. Healy as an additional insured on its commercial general liability insurance policy. K.C. Electric obtained its commercial general liability policy from Lumbermens for the period between August 8, 1997, and August 8, 1998. The policy was thus in effect when Leahy and

Sheehan incurred their injuries on August 26, 1997, and November 18, 1997, respectively.

As was required by the subcontract, the Lumbermens policy obtained by K.C. Electric included an additional insured provision, which added the following paragraph to the "WHO IS AN INSURED" section of the policy:

> Any person or organization to whom or to which you are obligated by virtue of a written contract, agreement or permit to provide such insurance as afforded by this policy is an [additional] insured, but only with respect to liability arising out of:
> a.    "Your work" for that insured by you
> . . . .

(App. at 71.)  The policy further defined "your work" as "[w]ork or operations performed by you or on your behalf; and . . . [m]aterials, parts or equipment furnished in connection with such work or operations."  (App. at 75.)  Thus, the policy covered only "liability arising out of . . . work" performed by the subcontractor for the contractor.

The district court held that S.A. Healy qualified as an additional insured under the Lumbermens policy, even if the employees were not actually engaged in work at the time they were injured because "K.C. employees cannot perform their work unless, of course, they can reach and leave their workplaces on the job site."  <u>Leahy</u>, slip op. at 3; <u>Sheehan</u>, slip op. at 3.  Thus, because the injuries were "incurred while on the job site," the district court held that the "work" requirement of the additional

-6-

insured provision was satisfied.  Leahy, slip op. at 3; Sheehan, slip op. at 3.

**B**

This court considered nearly identical policy language in Merchants Insurance Co. of New Hampshire v. United States Fidelity & Guaranty Co., 143 F.3d 5 (1st Cir. 1998).  There, the court held that "under Massachusetts law the phrase 'arising out of' denotes a level of causation that lies between proximate and actual causation."  Id. at 9.  However, the court did not further delineate this "intermediate causation" standard because, in Merchants Insurance, "the harm occurred while [the injured employee] was cutting and removing a section of the bridge, a task that was assigned to [the subcontractor] in the Sherman's Bridge project."  Id.  Because the harm occurred while the injured employee was actually performing work for the subcontractor, the fact that the subcontractor did not proximately cause the injury (which was caused by the negligence of an employee of the primary contractor) was irrelevant.  The court held: "More than 'but for' causation existed.  It was not simply because the two companies happened to be working in the same location that [the injured employee] was injured by [the primary contractor's] employee; rather, the injury was a consequence of the work that [the subcontractor] was performing."  Id. at 9-10.  This causal

connection was sufficient to satisfy the intermediate causation standard. Id. at 10.

The issue here is whether there is a sufficient nexus between the injuries incurred by Leahy and Sheehan and their work for K.C. Electric to satisfy the Merchants Insurance intermediate causation standard.[1] The parties dispute whether the summary

_____

[1] National Union claims that the "majority rule" is that an employee's mere presence on a work site is sufficient to invoke liability under such an additional insured provision. (Pl.-Appellant's/Cross-Appellee's Rep. Br. at 22-27.) However, most of the cases National Union cites for this proposition apply a less stringent standard of causation than the intermediate causation required by Merchants Insurance. See Admiral Ins. Co. v. Trident NGL, Inc., 988 S.W.2d 451, 454 (Tex. App. 1999) ("The majority view . . . is that for liability to 'arise out of operations' of a named insured it is not necessary for the named insured's acts to have 'caused' the accident; rather, it is sufficient that the named insured's employee was injured while present at the scene in connection with performing the named insured's business, even if the cause of the injury was the negligence of the additional insured."); Acceptance Ins. Co. v. Syufy Enters., 81 Cal. Rptr. 2d 557, 561 (Cal. Ct. App. 1999) ("California courts have consistently given a broad interpretation to the terms 'arising out of' or 'arising from' in various kinds of insurance provisions. It is settled that this language does not import any particular standard of causation or theory of liability into an insurance policy. Rather, it broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship."); Shell Oil Co. v. AC & S, Inc., 649 N.E.2d 946, 952 (Ill. App. Ct. 1995) ("[The injured employee's] injuries appear to have arisen from the operations of [the subcontractor] and [the contractor] on plaintiff's premises. The injuries would not have occurred 'but for' [the injured employee's] employment by [the contractor] and [the contractor's] presence on plaintiff's premises."); Md. Cas. Co. v. Chicago & N.W. Transp. Co., 466 N.E.2d 1091, 1094 (Ill. App. Ct. 1984) ("[T]he instant injuries appear to have arisen from the operation and use of the leased premises, since they would not have been sustained 'but for' the victim's employment on those premises."); see also Highland Park Shopping Vill. v. Trinity Universal Ins. Co., 36 S.W.3d 916, 918 (Tex. App. 2001) (adopting the same causation standard as

-8-

judgment record establishes that Leahy and Sheehan themselves were engaged in "work" in accordance with the policy when they were injured. Leahy testified by deposition that he was injured while he was walking through the tunnel toward a man lift that would take him to the surface. National Union contends that Leahy was working at the time of his accident, but Lumbermens asserts that Leahy was going to lunch. Leahy testified that the accident occurred "approximately right around lunchtime," but he also testified that he was in the tunnel to check the mine phones and to see if two K.C. Electric electricians were having any problems wiring pumps in the tunnel. (App. at 214-15.) Similarly, the parties dispute whether Sheehan was working at the time of his accident. In his answers to interrogatories, Sheehan stated that he was "performing" his duties "at the time [he was] injured," but he also stated that his "specific purpose" at the time was "going to [his] job to perform electrical maintenance, repairs, installations, etc." (App. at 281, 284.) National Union thus alleges that Sheehan was

Admiral Insurance).

Other cases have adopted a site rule without addressing the causation standard. See O'Connor v. Serge Elevator Co., 444 N.E.2d 982, 983 (N.Y. 1982) (holding that an employee's injuries "must be deemed as a matter of law to have arisen out of the work" under an indemnity clause when the employee was injured "while leaving his workplace for lunch"); Farren v. General Motors Corp., 708 F. Supp. 436, 449 (D. Mass. 1989) (concluding that the phrase "in connection with the work attributable to the Contractor" in an indemnity clause "was intended by the parties to cover injuries sustained by an employee . . . returning to his work site from a lunch break").

working when he was injured, while Lumbermens argues that he was merely traveling to his actual work location at the time of the injury.

Even if Leahy and Sheehan were not actually performing subcontractor work at the time of their accidents, the record is clear that the subcontractor's work was performed at various places throughout the tunnel, and, thus, at the time of their accidents, the employees were within the general area where the subcontractor's work was performed. Leahy testified that his "regular routine" was to travel throughout the tunnel, ensuring that lights were working properly, and that "basically [his] time was spent walking from the access points [for the tunnel] to the electricians and back," talking to the electricians, and testing the phones. (App. at 215-16.) Similarly, Sheehan testified that his usual duties were to "perform[] tunnel maintenance, repair[] lights, carry[] tools and cable, etc." (App. at 281.) We hold that the policy's requirements were satisfied because the employees were injured within the general area where the subcontractor's work was being performed, and their presence there was directly related to their work obligations, even if the employees were merely traveling to or from work or to or from a lunch break.

The purpose of the "your work" clause is not to differentiate between those employees who were actually engaged in work on a particular task when they were injured, as opposed to

-10-

those who were idle or moving about the job site; rather, the provision is at least designed to cover injuries incurred in traversing the work area for which the subcontractor was responsible for performing work, that is, the subcontractor's general work area. Requiring the employee actually to have been engaged in work would lead to artificial distinctions between employees who are performing specific tasks versus those traversing the subcontractor's general work area, waiting for instructions, or even pausing between tasks. Accordingly, we hold that the intermediate causation standard of Merchants Insurance is satisfied where the employee was injured within the general work area where the subcontractor's work was being performed, so long as his presence was work-related. The additional insured provision in the Lumbermens policy thus applies to S.A. Healy in this case. We need not, therefore, decide whether coverage exists simply because the injury occurred on the prime contractor's work site.

The court in McCarthy Brothers Co. v. Continental Lloyds Insurance Co., 7 S.W.3d 725 (Tex. App. 1999), was faced with a similar situation. In McCarthy, the injured employee slipped and fell as he was walking down an incline to get tools to perform his work from a trailer belonging to the subcontractor for which he worked "on the premises of" the construction site. Id. at 730. The court relied on Merchants Insurance and held that "[t]here was more than a mere locational relationship between the injury and

-11-

[the injured employee's] presence on the site" because the employee was within the subcontractor's general work area "for the purpose of carrying out [the subcontractor's] contract with [the contractor]." Id.[2]

The case on which Lumbermens primarily relies is factually distinguishable. In Pro Con Construction, Inc. v. Acadia Insurance Co., 794 A.2d 108 (N.H. 2002), the injured employee, a painter employed by a subcontractor, was injured when he slipped and fell on an icy sidewalk as he was walking to a coffee truck parked in the parking lot outside the building in which he was painting. Id. at 109. He sued the prime contractor, alleging that it had negligently failed to keep the sidewalk clear of snow and ice. Id. As in Merchants Insurance, the court required more than "but for" causation, but the court held that there was no nexus between the painting operations and the injuries because "[t]he injuries did not occur while the employee was engaged in any task related to [the] painting operations or near [the] painting operations." Id. at 110 (citation omitted). In Pro Con, the painter left the area in which Decorative Concepts' work was being performed to get coffee from the coffee truck. He was thus injured outside the general work area in which the subcontractor was

---

[2] Unlike the other Texas Courts of Appeals in Highland Park Shopping Village and Admiral Insurance Co., see n.1, supra, the court in McCarthy applied an intermediate standard of causation, consistent with Merchants Insurance.

-12-

performing work and was not "near" that area.  In contrast, the employees here, even if they were not actually performing work, remained in the subcontractor's general work area.[3]

## III

## A

The second issue in this case involves interpretation of the National Union policy.  The National Union policy included an "Other Insurance" provision, which provided that the National Union policy was primary (not excess) except in three situations not pertinent here.  (The Lumbermens policy also included an identical provision providing that the Lumbermens policy was primary.) However, National Union alleges that, in the policy it issued to S.A. Healy, the "Other Insurance" provision was superseded by an endorsement bearing the same date as the policy that was found in the policy's underwriting file.  That endorsement provides:

ENDORSEMENT

This Endorsement effective 12/31/95 12:01 A.M.
FORMS A PART OF POLICY NO. GL 817-67-02 ISSUED

---

[3] Lumbermens also argues that we should construe the policy to bar coverage because Mass. Gen. Laws ch. 149, § 29C bars a general contractor from securing an indemnity from its subcontractor "for injury to persons or damage to property not caused by the subcontractor or its employees, agents or subcontractors." Mass. Gen. Laws ch. 149, § 29C (2004).  However, section 29C does not apply to insurance policies, and the policy considerations reflected in section 29C are not applicable to such policies.  See, e.g., Johnson v. Modern Cont'l Constr. Co., 731 N.E.2d 96, 99 (Mass. App. Ct. 2000) ("We do not consider coverage questions under an insurance contract analogous to coverage under an indemnity provision of a construction contract.").

-13-

TO S.A. Healy Co./Modern Continental Joint Venture BY NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, P.A. [sic]

<u>OTHER INSURANCE CLAUSE</u>

In consideration of the payment of the premium, it is hereby understood and agreed that [the excess coverage provision in the policy] is deleted in its entirety and replaced by the following:

b.     Excess Insurance

<u>This insurance is excess over any other insurance, whether primary, umbrella, excess, contingent or on any other basis, and whether collectible or uncollectible</u>.

. . . .

4.     <u>If a "claim" arises out of the actions of a hired contractor or subcontractor who has agreed to either</u>:

a.     Contractually indemnify the "insured" against whom "claims" may be made for any "claims" resulting form [sic] the actions of the hired contractor or subcontractor, or

b.     <u>name the "insureds" against whom "claims" may be made as Additional Insureds on the hired contractor's or subcontractor's commercial general liability policy</u>.

(App. at 46 (emphases added).)

By its own terms, the endorsement purports to form a part of the policy.  However, the policy itself does not refer to the

-14-

endorsement. The policy's declaration page does not expressly incorporate any endorsements; it provides: "ENDORSEMENTS ATTACHED TO THIS POLICY: SEE ATTACHED SCHEDULE." (App. at 9.) The attached "FORMS SCHEDULE" includes a list of forms and endorsements, but the endorsement at issue here is not among the endorsements on the list. The endorsement thus is not incorporated by reference in the policy.

Accordingly, relying on the integration clause in the policy[4] and the policy's representation that "[t]he statements in the Declarations are accurate and complete," (App. at 19), Lumbermens argued that the endorsement was parol evidence that could not be considered in defining the scope of the National Union policy. See, e.g., Bank v. Int'l Bus. Machs. Corp., 145 F.3d 420, 424 (1st Cir. 1998) ("In Massachusetts, '[t]he parol evidence rule precludes evidence of earlier or contemporaneous discussions that would modify the provisions of a later integrated agreement which the proponent of the agreement seeks to enforce.'" (quoting New England Fin. Res., Inc. v. Coulouras, 566 N.E.2d 1136, 1139 (Mass. App. Ct. 1991)) (alteration in original)); ITT Corp. v. LTX Corp., 926 F.2d 1258, 1261 (1st Cir. 1991) ("Under Massachusetts law, parol evidence may not be admitted to contradict the clear terms of

---

[4] The integration clause provides: "This policy contains all the agreements between you and us concerning the insurance afforded. . . . This policy's terms can be amended or waived only by endorsement issued by us and made a part of the policy." (App. at 57.)

-15-

an agreement, or to create ambiguity where none otherwise exists.").

The district court agreed. It found that "the relevant endorsement is not listed on the declaration page or the attached schedule of included forms, and therefore, is not part of the policy." <u>Leahy</u>, slip op. at 4; <u>Sheehan</u>, slip op. at 4. Thus, the district court held, because of the policy's integration clause, the endorsement could not be considered. <u>Leahy</u>, slip op. at 4; <u>Sheehan</u>, slip op. at 4. In accordance with the standard "Other Insurance" provision, the court thus held that both parties were primary carriers. <u>Leahy</u>, slip op. at 5; <u>Sheehan</u>, slip op. at 5.

**B**

We conclude that there are genuine issues of material fact as to whether the endorsement forms a part of the policy, and that summary judgment was improper.

National Union correctly notes that the policy must be construed as a whole. <u>See, e.g.</u>, <u>Fireman's Fund Ins. Co. v. Special Olympics Int'l, Inc.</u>, 346 F.3d 259, 261 (1st Cir. 2003) ("An insurance policy is to be read as a whole without according undue emphasis to any particular part over another." (quoting <u>Mission Ins. Co. v. U.S. Fire Ins. Co.</u>, 517 N.E.2d 463, 466 (Mass. 1988)) (internal quotation marks omitted)). However, the question is, what is the whole policy? We think that the mere fact that the main body of the policy contains no reference to the endorsement

-16-

does not, in and of itself, conclusively establish that the main

policy and the endorsement are not part of a single document.[5]

Further evidence is needed (apart from the endorsement

language itself) concerning whether the endorsement formed a part

of the policy. For example, if the endorsement were physically

attached to the policy when transmitted to the insured, such a

physical connection could indicate that the endorsement formed a

part of the policy:

> It is the general rule that an endorsement or
> rider attached to an insurance policy becomes
> and forms a part of the contract; that the
> policy and the endorsement or rider shall be
> construed together; and that where the
> provisions in the body of the policy and those
> in the endorsement or rider are in
> irreconcilable conflict the provisions
> contained in the endorsement or rider will
> prevail over those contained in the body of
> the policy.

Farmers Ins. Exch. v. Ledesma, 214 F.2d 495, 498 (10th Cir. 1954);

see also, e.g., Blevio v. Aetna Cas. & Sur. Co., 39 F.3d 1, 2 (1st

Cir. 1994) (considering an endorsement attached to an insurance

policy along with the policy); Petrowski v. Hawkeye-Security Ins.

Co., 237 F.2d 609, 610 (7th Cir. 1956) ("All three documents,

---

[5] There is no contention here that the endorsement can form a stand-alone contract. Cf. Fairfield 274-278 Clarendon Trust v. Dwek, 970 F.2d 990, 992 (1st Cir. 1992) (determining which of several stand-alone contracts was the operative contract between the parties). Nor is there any contention that the endorsement constituted a later amendment to the policy. Therefore, the policy's provision that "[t]his policy's terms can be amended or waived only by endorsement issued by us and made a part of the policy" is irrelevant. (App. at 57.)

policy, declarations, and special endorsement, were stapled together and comprised one unit when issued."); see also Rumsfeld v. Freedom NY, Inc., 346 F.3d 1359, 1361 (Fed. Cir. 2003); Restatement (Second) of Contracts § 132 (1981) (stating that, for purposes of the Statute of Frauds, a contract "may consist of several writings if one of the writings is signed and the writings in the circumstances clearly indicate that they relate to the same transaction"); id. cmt. c ("It is sufficient . . . that the party to be charged physically attaches one document to the other or encloses them in the same envelope.").

The summary judgment filings by the parties here only concern the state of National Union's underwriting files, not the policy documents received by the insured. It is thus unclear whether the main policy and the endorsement were stapled together as sent by National Union and as received by the insured. In addition, there may be other evidence, including evidence of industry practice, that might show that the endorsement and the policy were parts of the same document. Without a more fully-developed record, we must vacate the district court's effective grant of summary judgment for Lumbermens and remand this case to the district court for further proceedings.[6]

---

[6] Lumbermens also notes that the endorsement at issue lists the policy number as "GL 817-67-02," (App. at 46), whereas the endorsements listed in the forms schedule consistently use the policy number "GL 817-67-02 RA," (E.g., App. at 23 (emphasis added).). We attach no significance to this minor inconsistency.

**IV**

For the foregoing reasons, we conclude that S.A. Healy is an additional insured pursuant to the Lumbermens policy. However, we cannot determine on this record whether the National Union policy provided only excess coverage. Accordingly, we <u>vacate</u> the district court's judgment, and we <u>remand</u> to the district court for further proceedings.

<u>It is so ordered</u>.