[Nos. 34901-9-II; 35241-9-II.   Division Two.   April 24, 2007.]

TACOMA NARROWS CONSTRUCTORS, *Plaintiff*, v. NIPPON STEEL-KAWADA BRIDGE, INC., *Defendant*.

NIPPON STEEL-KAWADA BRIDGE, INC., ET AL., *Respondents*, v. TACOMA NARROWS CONSTRUCTORS ET AL., *Appellants*.

*Daniel J. Dunne, Jr., Charles J. Ha*, and *Leonard J. Feldman* (of *Heller Ehrman, LLP*), for appellants.

*Michael H. Himes* and *Rolf B. Johnson* (of *Perkins Coie, LLP*) and *Thomas F. Ahearne* and *Jeremy R. Larson* (of *Foster Pepper, PLLC*) (*Margaret K. Pfeiffer, Erin R. Chlopak*, and *Bruce W. Hickey* of *Sullivan & Cromwell, LLP* and *Paul W. Berning* and *David M. Buoncristiani* of *Thelen Reid Brown Raysman & Steiner*, of counsel), for respondents.

¶1 HUNT, J. — Samsung Heavy Industries Co., Ltd., appeals two pretrial rulings: (1) the trial court's denial of Samsung's motion to stay proceedings and to compel arbitration of Nippon Steel-Kawada Bridge, Inc., and Nippon Steel/Kawada Joint Venture's (collectively NSK) claims against Samsung and (2) the trial court's granting of NSK's motion for leave to amend its complaint, asserting a new claim against Samsung. Holding that the NSK-Samsung contract does not compel arbitration of this dispute,[1] we affirm.

## FACTS

### I. THE PARTIES & CONTRACTS

¶2 This litigation involves a series of contracts and subcontracts to construct a second span of the Tacoma

---

[1] Because we stayed the trial court proceedings pending this appeal, Samsung's appeal from the trial court's denial of a stay is moot.

Narrows Bridge, a state public works project. The Washington State Department of Transportation engaged Tacoma Narrows Constructors, a joint venture of Bechtel Infrastructure Corporation and Kiewit Pacific Company, as general contractor for the bridge construction.

¶3 In August 2002, Tacoma Narrows Constructors contracted with Nippon Steel-Kawada Bridge[2] to furnish and to deliver steel bridge and suspension cables for the Tacoma Narrows Bridge. This contract also required Nippon Steel-Kawada Bridge to execute a letter of credit, benefiting Tacoma Narrows Constructors, in the event of Nippon Steel-Kawada Bridge's breach of performance. The contract amount was approximately $63 million.

¶4 Nippon Steel-Kawada Bridge subcontracted fabrication and delivery of the steel bridge deck to its sister company, Nippon Steel/Kawada Joint Venture (NSK Joint Venture).[3]

¶5 In November 2002, NSK Joint Venture issued a purchase order to Samsung Heavy Industries Co., Ltd.[4] Under their contract, Samsung promised (1) to fabricate the bridge deck in Korea from steel supplied by NSK according to plans specified in the NSK Joint Venture-Samsung contract, (2) to load the completed bridge decks onto vessels that NSK Joint Venture supplied for transport, and (3) to allow NSK Joint Venture to audit Samsung's fabrication and other performance costs.[5] This contract amount was approximately $24.6 million.

---

[2] Nippon Steel-Kawada Bridge, Inc., is a California corporation owned by parent companies Nippon Steel Corporation and Kawada Bridge, Inc.

[3] NSK Joint Venture is a Japanese venture.

[4] Samsung Heavy Industries Co., Ltd., is a corporation registered in the Republic of Korea.

[5] This audit clause entitled NSK Joint Venture to audit Samsung anytime during normal business hours within three years of the last acceptance date of the contract.

## II. Change Orders and NSK Joint Venture-Samsung Letter of Agreement

¶6 Shortly after execution of the NSK Joint Venture-Samsung contract, Tacoma Narrows Constructors began issuing redesign orders for the bridge decks. The bridge deck redesign altered and considerably increased Samsung's scope of work under the NSK Joint Venture-Samsung contract, including substantial additional costs and additional time. During this time, Samsung continued to work on the bridge decks because both the Tacoma Narrows Constructors-Nippon Steel-Kawada Bridge contract and the NSK Joint Venture-Samsung contract required work to proceed, regardless of disputes.

¶7 Samsung then submitted numerous change order requests under the NSK Joint Venture-Samsung contract terms. NSK Joint Venture said it would forward these requests to Tacoma Narrows Constructors. Around this time, Samsung threatened to cease work, or considerably slowed work, on the bridge decks.

¶8 In order to secure Samsung's performance under the NSK Joint Venture-Samsung contract, and thereby perform its obligations under the Tacoma Narrows Constructors-Nippon Steel-Kawada Bridge contract, NSK Joint Venture entered into a letter of agreement with Samsung in January 2005. This letter of agreement set a new performance schedule for Samsung, and NSK Joint Venture agreed to pay Samsung an additional $12 million. Nonetheless, Samsung apparently continued to delay performance because of continued disputes about its change order requests.

¶9 A December 2004 mediation involving Tacoma Narrows Constructors, Nippon Steel-Kawada Bridge, NSK Joint Venture, and Samsung failed to resolve the dispute.

### III. Litigation

### A. "June" Case

¶10 In June 2005, Tacoma Narrows Constructors served Nippon Steel-Kawada Bridge with a complaint (the June case),[6] but it did not file this complaint in superior court until September 20, the day after NSK filed a separate action against Tacoma Narrows Constructors and Samsung.

### B. "September" Case

¶11 On September 19, 2005, NSK filed a complaint against both Tacoma Narrows Constructors and Samsung in Thurston County Superior Court (the September case).[7] NSK simultaneously moved for a temporary restraining order to prevent Samsung from ceasing work on the bridge decks.

¶12 On September 29, Samsung and Tacoma Narrows Constructors met, seeking resolution and continued work on the bridge decks; they included neither Nippon Steel-Kawada Bridge nor NSK Joint Venture in this meeting. Samsung and Tacoma Narrows Constructors entered into an agreement—the "TNC-Samsung Settlement Agreement." Under this agreement, Tacoma Narrows Constructors agreed to Samsung's proposed change order requests, and Tacoma Narrows Constructors agreed to pay Samsung an additional $29.1 million.

¶13 To pay Samsung, Tacoma Narrows Constructors drew approximately $12.9 million against Nippon Steel-Kawada Bridge's letter of credit guaranteeing its perfor-

---

[6] The Thurston County Superior Court cause number is 05-2-01889; thus, the report of proceedings refers to it as the "1889 case." The parties often refer to this "1889 case" as the June case even though the complaint in this case was not filed until September. Nonetheless, for clarity, we will use the parties' term.

[7] The Thurston County Superior Court cause number is 05-2-01877; thus, the report of proceedings refers to it as the "1877 case." The parties often refer to this "1877 case" as the September case. We will use the parties' term.

mance. Tacoma Narrows Constructors made this draw without Nippon Steel-Kawada Bridge's permission.

¶14 Samsung moved to dismiss NSK's claims for lack of personal jurisdiction. The trial court held it had personal jurisdiction over Samsung and denied the motion on February 10, 2006. Shortly thereafter, Samsung answered NSK's claims and asserted counterclaims.

¶15 On March 15, Samsung moved to stay the proceedings and to compel arbitration under the NSK Joint Venture-Samsung contract. On May 5, the trial court heard argument and denied Samsung's motion, concluding that NSK's claims against Samsung are not arbitrable under the terms of the NSK Joint Venture-Samsung contract because the issues "evolved around the same facts" as those in the ongoing NSK-Tacoma Narrows Constructors disputes being litigated in superior court.

## C. "Audit Claim"

¶16 Around this time, in March 2006, NSK Joint Venture notified Samsung that it intended to exercise its NSK Joint Venture-Samsung contract audit rights to obtain actual cost information about Samsung's change order requests. Although the NSK Joint Venture-Samsung contract granted NSK Joint Venture the right to audit Samsung's fabrication and other performance costs, according to NSK Joint Venture, Samsung repeatedly refused these requests.

¶17 In response to Samsung's audit refusals, NSK moved for leave to amend its complaint in the September case, specifically, to add a claim for Samsung's breach of contract in refusing NSK Joint Venture's request to audit Samsung's bridge-deck fabrication costs (the audit claim) under section 33 of the NSK Joint Venture-Samsung contract. Samsung objected that (1) under RAP 7.2, the trial court lacked jurisdiction to rule on the motion because the case was pending on appeal and (2) NSK was attempting to use section 33 to begin early discovery for the pending lawsuits. The trial court granted NSK's motion to amend,

finding (1) the "audit claim" was "connected" to a NSK-Tacoma Narrows Constructors dispute and, thus, did not require arbitration under section 30 of the contract and (2) RAP 7.2 does not apply to interlocutory appeals and, therefore, the trial court had jurisdiction to decide these claims.

## IV. INTERLOCUTORY APPEAL

¶18 Samsung appeals (1) the trial court's order denying Samsung's motions to compel arbitration and to stay proceedings and (2) the trial court's order granting NSK's motion for leave to amend its complaint.

¶19 Our court commissioner granted Samsung's motion to stay the trial court proceedings for both the June and September cases until we resolve this appeal.

## ANALYSIS

### I. SAMSUNG'S MOTION TO STAY TRIAL PROCEEDINGS AND TO COMPEL ARBITRATION

¶20 In denying Samsung's motion to compel arbitration and to stay the trial proceedings, the trial court focused on two primary issues: (1) whether NSK Joint Venture and Samsung had a clear agreement to arbitrate all disputes between them and (2) whether the NSK-Samsung disputes were "connected" to the NSK-Tacoma Narrows Constructors disputes, thus invoking paragraph 4 of section 30 of the NSK Joint Venture-Samsung contract governing dispute resolution.

¶21 Samsung argues that the trial court erred in ruling that: (1) NSK Joint Venture and Samsung did not have a clear agreement to arbitrate *all* disputes that arose under the NSK Joint Venture-Samsung contract;[8] (2) instead, paragraph 4 of section 30 of the contract applies—NSK Joint Venture may "require" that any "dispute aris[ing] in

---

[8] The NSK Joint Venture-Samsung contract is alternatively referenced as the "Purchase Order."

connection with the TNC Contract" that, in NSK Joint Venture's opinion, "touches or concerns the Subcontract Work" under the NSK Joint Venture-Samsung contract "be dealt with jointly with the dispute under the TNC [Tacoma Narrows Constructors] Contract," Clerk's Papers (CP) at 1304; (3) the NSK Joint Venture-Samsung disputes were connected with and involved the same facts as the NSK-Tacoma Narrows Constructors disputes; and (4) therefore, NSK Joint Venture could bypass arbitration and instead require the NSK Joint Venture-Samsung disputes to be addressed jointly with the NSK-Tacoma Narrows Constructors disputes in the superior court litigation.

¶22 In response, NSK argues that the trial court correctly ruled that the NSK Joint Venture-Samsung contract's arbitration provision did not apply to NSK's claims against Samsung here.[9] We disagree with Samsung and agree with the trial court.

## A. Dispute Resolution

¶23 The dispute resolution provision, section 30, of the NSK Joint Venture-Samsung contract, provides:

> All disputes, controversies, or differences which may arise out of or in relation to or in connection with the [NSK Joint Venture-Samsung] Purchase Order, or for the breach thereof, shall be amicably settled between the Purchaser [NSK Joint Venture] and the Vendor [Samsung]. In case no agreement is reached within a reasonable time, such disputes, controversies or differences shall be finally referred to and settled by arbi-

---

[9] More specifically, NSK contends that (1) it was proper for the trial court, not an arbitrator, to determine the scope of the contract's arbitration clause; (2) using the basic cannons of contract interpretation, the trial court properly found that (a) NSK Joint Venture and Samsung did not intend to arbitrate disputes that concerned NSK-Tacoma Narrows Constructors disputes and (b) NSK had unilateral discretion to make this determination; (3) NSK properly invoked paragraph 4, section 30, of the contract and properly determined, within its discretion, that the NSK claims against Tacoma Narrows Constructors concerned NSK's claims against Samsung; and (4) the trial court properly found that arbitration was not required here (a) because the NSK Joint Venture-Samsung contract provides for arbitration only where the arbitrator's decision would be final and binding and (b) because any litigation outcome between Tacoma Narrows Constructors and NSK would be final, arbitration cannot bind NSK as to its claims against Samsung.

tration. The arbitration shall take place in the court of International Chamber of Commerce in Singapore in accordance with the Rules of Conciliation and Arbitration of the International Chamber of Commerce. The Arbitration shall be made by three (3) arbitrators. The award rendered by the arbitrators shall be final and binding upon both parties.

Notwithstanding the foregoing, all questions, disputes or differences between the Purchaser and the Vendor arising as a result of disputes between or among WSDOT [Washington State Department of Transportation], TNC, NSKB [Nippon Steel-Kawada Bridge] and/or the Purchaser relating to the Vendor's performance of the Subcontract Work under the Purchase Order or involving claims by WSDOT, TNC [Tacoma Narrows Constructors], and/or NSKB against the Purchaser resulting from the Subcontract Work shall be governed in accordance with the laws of the State of Washington, the United States of America.

The Vendor shall, upon the Purchaser's written request, fully assist the Purchaser in the proceedings of the arbitration or litigation arising between or among WSDOT, TNC, NSKB and/or the Purchaser relating to the Vendor's performance of the Subcontract Work or otherwise related to the Vendor's actions under the Purchase Order. In such case, the Vendor shall be bound by the award of such arbitration or the judgment of such litigation, as the case may be.

If any dispute arises in connection with the TNC Contract and the Purchaser is of the opinion that such dispute touches or concerns the Subcontract Work, then the Purchaser may by notice in writing to the Vendor require that any such dispute under this Purchase Order shall be dealt with jointly with the dispute under the TNC Contract. The Vendor shall be bound in like manners as the Purchaser by the award or decision made in connection with such joint dispute.

CP at 1304.

¶24 Samsung argues that this dispute-resolution provision invokes the following controlling policies: (1) The Federal Arbitration Act, Title 9 U.S.C., recognizing the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. ch. 2, requires NSK to submit the

NSK-Samsung claims to arbitration; (2) federal and Washington law have a liberal policy of construing arbitration clauses in favor of arbitration; and (3) the question of arbitrability is itself a dispute that arose under the NSK Joint Venture-Samsung contract and, therefore, NSK must arbitrate it, too. Again, we disagree.

## B. The Court Determines Arbitrability

■ ¶25  Chapter 2 of the Federal Arbitration Act[10] mandates that both state and federal United States courts enforce the international Convention on the Recognition and Enforcement of Foreign Arbitral Awards. *See* 9 U.S.C. §§ 201, 205. "Article II of the Convention imposes a mandatory duty on the courts of a Contracting State to recognize, and enforce an agreement to arbitrate unless the agreement is 'null and void, inoperative or incapable of being performed.'" *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 959 (10th Cir. 1992) (footnote omitted) (quoting 9 U.S.C. § 201 note, art. II(3)).

■ ¶26  The general provisions of the Federal Arbitration Act, articulated under Chapter 1, apply to cases brought under Chapter 2, but only to the extent that Chapter 1 "is not in conflict with [chapter 2] or the Convention as ratified by the United States." 9 U.S.C. § 208. Because all parties in this dispute are from contracting states to the convention,[11] Chapter 2 of the Federal Arbitration Act and Chapter 1, to the extent that it does not conflict with Chapter 2, govern the arbitrability of the parties' claims. *See McDermott Int'l, Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199, 1208 (5th Cir. 1991).

■ ¶27  The general rule is that whether and what the parties have agreed to arbitrate is an issue for the courts to decide unless otherwise stipulated by the parties. *John*

---

[10] Chapter 2 of the Federal Arbitration Act ratified the international Convention on the Recognition and Enforcement of Foreign Arbitral Awards. *See* 9 U.S.C. §§ 201-208.

[11] *See* 9 U.S.C. § 201.

*Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 546-47, 84 S. Ct. 909, 11 L. Ed. 2d 898 (1964) (Whether the parties have agreed to arbitrate and, if so, what issues they have agreed to arbitrate are "matter[s] to be determined by the Court on the basis of the contract entered into by the parties.").[12] "The party claiming that arbitrability is for the arbitrator to decide bears the burden of proof and must show that the contract clearly manifests such an intention." *Associated Milk Dealers, Inc. v. Milk Drivers Union*, 422 F.2d 546, 550 (7th Cir. 1970). Like all questions of law, we review questions of arbitrability de novo. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995); *ACF Prop. Mgmt., Inc. v. Chaussee*, 69 Wn. App. 913, 919, 850 P.2d 1387, *review denied*, 122 Wn.2d 1019 (1993).

¶28 Four principles guide us when determining whether the parties agreed to submit a particular dispute to arbitration:

> (1) the duty to submit a matter to arbitration arises from the contract itself; (2) the question of whether parties have agreed to arbitrate a dispute is a judicial one unless the parties clearly provide otherwise; (3) a court should not determine the underlying merits of a dispute in determining the arbitrability of an issue; and (4) arbitration of disputes is favored by the courts.

*W.A. Botting Plumbing & Heating Co. v. Constructors-Pamco*, 47 Wn. App. 681, 683, 736 P.2d 1100 (1987) (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986)).

¶29 Contrary to Samsung's contention, a plain reading of the dispute resolution clause here (section 30 of the NSK Joint Venture-Samsung contract) does not clearly state that the parties agreed to submit the question of arbitrability to an arbitrator. Although Samsung argues that the phrase "all disputes" implicitly encompasses any arbitra-

---

[12] *See also United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960); *Metal Prods. Workers Union, Local 1645 v. Torrington Co.*, 358 F.2d 103, 105 (2d Cir. 1966).

bility questions, such general "all disputes" arbitration phrases are not an express delegation of the issue of arbitrability to the arbitrator; on the contrary, federal courts have consistently held that questions of arbitrability must be "a clear and unmistakable delegation." *Lebanon Chem. Corp. v. United Farmers Plant Food, Inc.*, 179 F.3d 1095, 1100 (8th Cir. 1999). Therefore, Samsung's argument that the general "all disputes" arbitration clause covers questions of arbitrability fails, and Samsung fails to show that NSK Joint Venture and Samsung clearly intended questions of arbitrability to be arbitrable.

¶30 Adhering to the general rule, *supra,* we hold that a court, not an arbitrator, is the appropriate entity to determine the question of whether the parties agreed to submit a specific claim to arbitration, unless there is a clear agreement to the contrary, which is not present here.

## C. Arbitrability of Specific Claims

¶31 In determining the scope of the contract's dispute resolution provision, section 30, the trial court ruled that Samsung and NSK Joint Venture agreed to arbitrate all disputes that arose under the NSK Joint Venture-Samsung contract, as long as those disputes were not "connected" with or based on the same facts involved in any dispute arising under the Tacoma Narrows Constructors-Nippon Steel-Kawada Bridge contract. Samsung argues that the trial court erroneously interpreted section 30 because (1) paragraph 4's phrase, "[a]ny such dispute under this Purchase Order *shall be dealt with jointly* with the dispute under the TNC[-NSKB] Contract," does not clearly require litigation, Appellant's Reply Br. at 17-18, and (2) the trial court should have utilized the interpretation principle favoring arbitration: "that the parties' intentions 'are generously construed as to issues of arbitrability,' with a dispute being arbitral 'unless it can be said with positive assurance' that [the] arbitration clause is not susceptible of an interpretation that covers the dispute.' *Kaymaya Co., Ltd v. American Prop. Consultants, Ltd.*, 91 Wn. App. 703,

714[, 959 P.2d 1140] (1998), quoting *ML Park Place Corp. v. Hedreen*, 71 Wn. App. 727, 739[, 862 P.2d 602] (1993)." Appellant's Reply Br. at 19. In sum, Samsung argues that, because paragraph 4 does not clearly say *how* the Tacoma Narrows Constructors-connected disputes shall be dealt with jointly, the trial court should have ruled in favor of arbitrability. We disagree.

### 1. Standard of review

¶32  We review de novo the trial court's interpretation of a contract, including an arbitration clause. *Petersen v. Schafer*, 42 Wn. App. 281, 285, 709 P.2d 813 (1985), *review denied*, 105 Wn.2d 1011 (1986). In interpreting an arbitration clause, the intentions of the parties as expressed in the agreement control, but " 'those intentions are generously construed as to issues of arbitrability.' " *W.A. Botting*, 47 Wn. App. at 684 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985)). To rule that a particular dispute is not arbitrable under an arbitration agreement, "[t]he court must be able to say 'with positive assurance' that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *ML Park Place*, 71 Wn. App. at 739 (quoting *Local Union No. 77, Int'l Bhd. of Elec. Workers v. Pub. Util. Dist. No. 1*, 40 Wn. App. 61, 65, 696 P.2d 1264 (1958)). Such is not the case here.

### 2. "In connection with" and "touches or concerns"

¶33  Agreeing with the trial court, we hold that paragraph 4 of section 30 of the NSK Joint Venture-Samsung contract clearly expresses the parties' intent to resolve "jointly" any pending disputes "in connection with the [Tacoma Narrows Constructors] Contract" that, in the opinion of NSK Joint Venture, "touches or concerns [Samsung's] Subcontract Work."

¶34  Samsung next argues that (1) even if the trial court correctly interpreted section 30, the disputes between Samsung and NSK Joint Venture, and the disputes be-

tween NSK and Tacoma Narrows Constructors, are not the same disputes and (2) mere overlap of facts is not enough to invoke the paragraph 4 arbitration exception. This argument also fails.

¶35 The trial court reviewed NSK's first amended complaint in the September case, Tacoma Narrows Constructors' complaint in the June case, and all parties' counterclaims, which included the following claims and counterclaims:

SEPTEMBER CASE: NSK v. TACOMA NARROWS CONSTRUCTORS & SAMSUNG

NSK's Complaint and Claims Against Samsung:

¶36 (1) declaratory judgment of the parties' rights under the NSK Joint Venture-Samsung contract;

¶37 (2) damages for Samsung's anticipatory repudiation of the NSK Joint Venture-Samsung contract and NSK Joint Venture-Samsung letter of agreement, based on Samsung's threats to cease work;

¶38 (3) damages for unjust enrichment, based on Samsung's acceptance of Tacoma Narrows Constructors' $12.9 million draw on Nippon Steel-Kawada Bridge's Letter of Credit;

¶39 (4) indemnification by Samsung, under the NSK Joint Venture-Samsung contract, whereby Samsung indemnifies NSK for any liabilities incurred because of Samsung's repudiation or breach, including Tacoma Narrows Constructors' draw on Nippon Steel-Kawada Bridge's Letter of Credit.

NSK's Complaint and Claims Against Tacoma Narrows Constructors:

¶40 (5) declaratory judgment of the parties' rights under the Nippon Steel-Kawada Bridge-Tacoma Narrows Constructors contract;

¶41 (6) damages and rescission of the Nippon Steel-Kawada Bridge-Tacoma Narrows Constructors contract based

on Tacoma Narrows Constructors' fraudulent representations about the initial deck designs;

¶42 (7) damages and rescission of the Nippon Steel-Kawada Bridge-Tacoma Narrows Constructors contract because Tacoma Narrows Constructors repudiated the contract when it demanded radical new deck designs;

¶43 (8) damages for Tacoma Narrows Constructors' breach of contract via breach of the implied covenant of good faith and fair dealing, because Tacoma Narrows Constructors intended to submit radical new deck designs when it entered into the Nippon Steel-Kawada Bridge-Tacoma Narrows Constructors contract with Nippon Steel-Kawada Bridge;

¶44 (9) damages and rescission of the Nippon Steel-Kawada Bridge-Tacoma Narrows Constructors contract for failure of the parties to have a "meeting of the minds" because Tacoma Narrows Constructors intended to submit radical redesigns and Nippon Steel-Kawada Bridge did not expect any redesigns;

¶45 (10) damages for Tacoma Narrows Constructors' tortious interference with the NSK Joint Venture-Samsung contract, based on Tacoma Narrows Constructors' offer to Samsung to pay Samsung, directly, an additional $25 million in order for Samsung to resume fabrication and to deliver the bridge decks on schedule;

¶46 (11) damages for Tacoma Narrows Constructors' wrongful draft of $12.9 million on Nippon Steel-Kawada Bridge's Letter of Credit, because to obtain the draft, Tacoma Narrows Constructors misrepresented to Nippon Steel-Kawada Bridge's bank that Nippon Steel-Kawada Bridge had breached the Nippon Steel-Kawada Bridge-Tacoma Narrows Constructors contract.

<u>Samsung's Answer and Counterclaims Against NSK:</u>[13]

¶47 (12) declaratory judgment that NSK's claims against Samsung must be arbitrated;

¶48 (13) damages for NSK Joint Venture's breach of contract because NSK Joint Venture failed to compensate Samsung for the additional material costs incurred as a result of Tacoma Narrows Constructors' deck redesigns;

¶49 (14) damages for NSK Joint Venture's breach of contract because NSK Joint Venture failed to compensate Samsung for the additional fabrication costs incurred as a result of Tacoma Narrows Constructors' deck redesigns;

¶50 (15) damages for NSK Joint Venture's unjust enrichment as a result of Samsung's fabrication in accordance with Tacoma Narrows Constructors' deck redesign.

JUNE CASE: TACOMA NARROWS CONSTRUCTORS V. NSK

<u>Tacoma Narrows Constructors' Complaint and Claims Against NSK:</u>

¶51 (1) declaratory judgment of Tacoma Narrows Constructors' and NSKB's rights and obligations under their Nippon Steel-Kawada Bridge-Tacoma Narrows Constructors contract;

¶52 (2) specific performance that Nippon Steel-Kawada Bridge fabricate and deliver the bridge decks in accordance with the agreed delivery schedule;

¶53 (3) injunctive relief seeking to enforce specific performance and delivery;

¶54 (4) damages for Nippon Steel-Kawada Bridge's repudiation of the Nippon Steel-Kawada Bridge-Tacoma Narrows

---

[13] Tacoma Narrows Constructors' answer to NSK's amended complaint does not allege any counterclaims, but it did state that its counterclaims were already asserted in its prior lawsuit, i.e., the June case.

Constructors contract, based on Nippon Steel-Kawada Bridge's Letter of Agreement with Samsung, agreeing to a different delivery schedule than the one in Nippon Steel-Kawada Bridge's contract with Tacoma Narrows Constructors, and Nippon Steel-Kawada Bridge's failure to pay undisputed money owed to Samsung, thereby causing Samsung to delay performance.

### NSK's Answer and Counterclaims against Tacoma Narrows Constructors:

¶55 NSK asserts the same claims against Tacoma Narrows Constructors that it alleged in NSK's September case complaint against Tacoma Narrows Constructors. See *supra.*

¶56 NSK Joint Venture and Samsung agreed under section 30 to arbitrate only those disputes, controversies, or differences that are unconnected to a NSK Joint Venture-Tacoma Narrows Constructors dispute. These superior court claims and counterclaims reveal a high degree of connection among them, and also between them and NSK Joint Venture's audit claim against Samsung. The trial court found that all of these claims revolved "around the same facts, the same issues, perhaps being approached from a different side of the proverbial coin." We agree with and adopt the trial court's reasoning. We hold, therefore, that the trial court did not err in denying Samsung's motion to compel arbitration.[14]

## II. AMENDED COMPLAINT—NSK'S ADDITION OF AUDIT CLAIM

¶57 Samsung next argues that (1) NSK Joint Venture's audit claim is subject to arbitration under section 30 of the NSK Joint Venture-Samsung contract; (2) the trial court erred in finding that NSK Joint Venture's audit claim was "connected" to a NSK-Tacoma Narrows Constructors dis-

---

[14] Because we have both stayed the proceedings below pending this appeal and affirmed the trial court's denial of Samsung's motion to compel arbitration, Samsung's appeal of the trial court's denial of its motion to stay is moot and we need not address it.

pute and, therefore, did not require arbitration; and (3) the trial court erred in allowing NSK Joint Venture to amend its complaint to add its audit claim.

¶58 We agree with the trial court that (1) the audit claim factually related to the claims between NSK and Tacoma Narrows Constructors in the pending litigation and (2), thus, paragraph 4 of section 30 of the contract requires that such disputes be resolved jointly. The audit claim is clearly connected with the following claims underlying the court litigation: (1) NSK Joint Venture's need to know the costs underlying Samsung's change-order requests, (2) the effect of the design changes on the cost and performance of Samsung's bridge-deck fabrication, (3) Tacoma Narrow Constructors' entering into a side agreement with Samsung to change the production schedule and to pay Samsung additional funds, (4) Tacoma Narrows Constructors' withdrawal against Nippon Steel-Kawada Bridge's letter of credit to pay additional compensation to Samsung, (5) Nippon Steel-Kawada Bridge's lawsuit against Tacoma Narrows Constructors for wrongful withdrawal on the letter of credit when Nippon Steel-Kawada Bridge claimed it did not breach the contract or otherwise trigger draws on its letter of credit, and (6) Nippon Steel-Kawada Bridge's claim that Samsung knew the extra money it received from Tacoma Narrows Constructors wrongfully came from Nippon Steel-Kawada Bridge's letter of credit.

¶59 Under its contract with Samsung, NSK Joint Venture may require that its audit claim be resolved "jointly" with other pending disputes under the Tacoma Narrows Constructors' contract because, in its opinion, its audit claim "touches or concerns the Subcontract Work." See explanation above. Because the parties' connected claims are being addressed in superior court, the audit claim can

also be resolved jointly in superior court, together with the other related claims.[15]

¶60 Affirmed.

ARMSTRONG and PENOYAR, JJ., concur.

Review granted at 163 Wn.2d 1011 (2008).

---

[15] We further note that these other claims and their parties are not subject to the NSK Joint Venture-Samsung contract and arbitration clause. Therefore, the forum for these claims is superior court, not arbitration in Hong Kong, which would be the venue for claims subject to arbitration under the NSK Joint Venture-Samsung contract.